IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**TERRY JENKINS,**
      **Plaintiff,**

**v.**                                **Case No: 1:08cv251/MMP/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
      **Defendant.**

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Jenkins' application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

## PROCEDURAL HISTORY

Mr. Jenkins filed applications for benefits claiming an onset of disability as of April 17, 2003. The applications were denied initially and on reconsideration and Mr. Jenkins requested a hearing before an administrative law judge (ALJ). A hearing was held on June 28, 2006 at which Mr. Jenkins was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 18-29) and Mr. Jenkins requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review. The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Jenkins had not engaged in substantial gainful activity since April 17, 2003; that he had severe impairments of (1) mild degenerative disc disease, lumbar region, (2) an affective disorder, (3) a somatoform disorder, (4) sinus bradycardia, and (5) hypertension, but that he did not have a condition or combination of conditions that met or medically equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1; that he had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand, walk and sit for a total of six hours in an eight hour workday, with some postural limitations, and that mentally he would be required to work under low stress conditions with simple, unskilled, one, two, or three step instructions; that he could perform his past relevant work as an order filler; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairment?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On October 14, 2002, approximately six months prior to Mr. Jenkins' claimed onset date, he was seen by William Benet, Ph.D., a psychologist, for examination. He reported a history of depression dating back to 1981 along with numbness and tingling in his arms from an automobile accident in 1997 or 1998. More recently, he had experienced difficulty remembering things. He had served in the military, and was discharged in 1990 after a tour of duty in Saudi Arabia during the Gulf War. He did not report any trauma during his military service and did not have a service connected disability. On mental status examination he was alert, serious, responsive and cooperative. Eye contact was fair. Motor activity and gait were normal. His speech was clear, coherent, relevant and articulate with organized and goal directed thinking. Short term memory was minimally adequate. Intermediate memory was poor and his fund of knowledge was poor. His general intellectual ability was estimated to be low/average. Results of the Wechsler Memory Scale - III Test was within the low/average to borderline range of memory functioning and the Minnesota Multiphasic Personality Inventory - II Test disclosed a profile similar to those which exhibit a schizoid or schizotypal pattern of adjustment with poor reality testing, subtle communication problems, and impaired empathy. Dr. Benet concluded that Mr. Jenkins suffered from chronic depression with schizoid/schizotypal personality maladjustment and mild impairment and memory functioning. He would be able to perform work-related mental activities that require low/average to average understanding and memory (tr. 260-265). Dr. Benet also filled out a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which he opined that Mr. Jenkins had moderate impairments in all relevant functioning areas (tr. 258-259).

The next medical entry is dated July 31, 2003, just over four months after Mr. Jenkins' claimed onset date. He was taken to the local VA hospital by ambulance, complaining of chronic pain over the prior two weeks. He characterized his pain as 8 out of 10. A nurse at the hospital noted that while Mr. Jenkins was waiting to be

seen by a physician, he climbed off the end of his bed, walked around, and was able to bend over the stretcher to get something out of a bag that his family brought, all with no apparent limited motion (tr. 220). Mr. Jenkins was treated conservatively and discharged after four hours (tr. 219-223). Five days later he was seen by a VA neurologist who felt that Mr. Jenkins suffered from an anxiety disorder (tr. 213-216). An x-ray taken on August 31, 2003 disclosed mild degenerative changes at the L5-S1 level (tr. 180-181).

On October 16, 2003, Mr. Jenkins saw a staff psychologist at the VA. He reported symptoms consistent with dysthymia, somatization and personality disorders. He complained of chronic pain in the area of his left neck extending down the length of his spine. The psychologist noted the earlier entry concerning Mr. Jenkins having arrived by ambulance but being able to move with little difficulty to stretch and reach for an object. On mental examination, Mr. Jenkins was alert, had adequate personal hygiene, and maintained adequate eye contact. His mood was moderately dysthymic and anxious, his affect was constricted, moderately sad, moderately anxious and congruent; his speech was normal but he indicated themes of victimization. He denied hallucinations and evidenced no delusions but he frequently indicated feelings of worthlessness and unexplainable physical symptoms. The psychologist's diagnosis was chronic pain syndrome, somatization, dysthymia, and personality disorder NOS. The psychologist recommended that Mr. Jenkins be referred to pain management because his concerns were generally medical in nature (tr. 211-212). Mr. Jenkins returned to the same staff psychologist on November 17, 2003. The psychologist recorded symptoms of anxiety and dysthymia, along with physical symptoms, and opined that they were suggestive of "somatization of some bona fide physical problems" and that Mr. Jenkins should be seen in pain management (tr. 195).

On February 27, 2004, Mr. Jenkins returned to the VA Emergency Room complaining of numbness in his left finger. He did not complain of chest pain. His neurological examination was normal, he was treated conservatively and

discharged. A cervical spine x-ray taken while he was there was read as being normal (tr. 179, 203-209).

On April 16, 2009, the VA psychiatrist diagnosed depression and put Mr. Jenkins on Paxil. A month later Mr. Jenkins reported that he had experienced some improvements on that medication (tr. 171-174). Mr. Jenkins returned to the VA psychiatrist on June 30, 2004 and again on August 12, 2004. He reported that a new medication, Rispridone, had been beneficial. Mr. Jenkins also complained of occasional auditory hallucinations. Overall he was noted to be alert, pleasant, cooperative and did not appear to be deeply depressed, psychotic, assaultive, or out of emotional control (tr. 170-171). Mr. Jenkins' next saw the VA psychiatrist on May 10, 2005. The doctor noted that Mr. Jenkins had missed four appointments in July through November of that year. Mr. Jenkins reported that he had moved into his own place which he enjoyed, and that he had been compliant with his treatment program (tr. 317-320).

On May 23, 2005, Mr. Jenkins reported for his annual examination and evaluation of chronic pain problems. He complained of non-specific pains and muscle strain but his physical examination was essentially normal. The last entry in the VA records was from a year later, May 25, 2006. Mr. Jenkins was noted to be in generally good health while being followed in the health clinic for depression. His physical examination was normal (tr. 287-288).

The only other treating physician seen by Mr. Jenkins was Robert Barnhill, D.C., a chiropractor. Dr. Barnhill treated Mr. Jenkins for neck and back pain on June 23, 2004. Dr. Barnhill saw Mr. Jenkins for follow up on six more occasions ending on July 30, 2004. On June 28, 2004 Dr. Barnhill noted in a "return to work" form that Mr. Jenkins was totally disabled (tr. 154-156).

In addition to treatment, Mr. Jenkins was examined by two physicians and at the request of the State Division of Disability Determinations. Mr. Jenkins saw Lance Chodosh, M.D., a family practitioner, on July 12, 2004. He presented complaining of heart, neck and back pain and mental health problems. He indicated

that he had suffered from major depression and schizophrenia since 1996 which were partially controlled.  He said that he could stand for approximately 25 minutes and could sit normally.  He was able to squat but avoided lifting more than 20 pounds.  On general examination he appeared healthy.  There was no deformity, tenderness or spasm in his neck or back, straight leg raising was normal, and neurologic examination was normal.  His standing balance and gait, including heel and toe walk were normal.  Dr. Chodosh noted an impression of chronic mental illness, hypertension under control, complaints of poor vision but no evidence of eye disease, history of back pain but no physical evidence of significant impairment.  Dr. Chodosh opined that Mr. Jenkins did not have any physical restrictions (tr. 135-141).

Mr. Jenkins was also evaluated by Andres Nazario, Jr., Ph.D., a psychologist. Mr. Jenkins gave a history of mental illness with diagnoses of major depression and schizophrenia and of his treatment at the VA Medical Center.  He indicated that he cried and felt anxious often and that he was generally unhappy.  Dr. Nazario conducted a mental status examination and found that Mr. Jenkins was alert and cooperative, his mood was somewhat depressed and his affect was appropriate, he was oriented, and he was able to do the various mental exercises presented.  He was persistent in his approach and his pace appeared adequate.  There was no evidence of hallucinations, delusions or obsessions or difficulties finding words. Dr. Nazario indicated that the symptoms described were consistent with a diagnosis of dysthymic disorder, late onset (tr. 142-145).

## DISCUSSION

Mr. Jenkins argues that the ALJ erred in failing to give proper weight to the decision of the Department of Veterans Affairs (VA), in not finding his chronic pain syndrome to be severe, in finding that he was not credible, and by improperly rejecting the opinion of a vocational expert, and that he was disabled from his onset date.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented

is whether the ALJ's decision that Mr. Jenkins was not disabled, in light of his physical and mental conditions, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### The VA Rating Decision.

Mr. Jenkins first contends that the ALJ erred in giving little weight to a disability rating by the VA.  In March 2004 Mr. Jenkins applied to the VA for a nonservice-connected disability and pension based on his physical and mental disabilities.  On August 18, 2004 the VA found that Mr. Jenkins was disabled and awarded benefits.  It is the law in the Eleventh Circuit that a disability decision by the Department of Veterans Affairs or Florida's Division of Workers Compensation is not binding on the Commissioner, but such a decision is entitled to great weight, and it is error for the Commissioner to ignore it.  *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984) (holding that because Florida workers compensation disability law and Social Security disability law operate similarly, the ALJ must give great weight to a workers compensation decision); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (holding that "findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight."); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A, March 25,  1981)[1] (holding that "a V[eterans] A[dministration] rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight . . . and [in this case] should have been more closely scrutinized."); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Hogard v. Sullivan*, 733 F.Supp. 1465 (M.D. Fla. 1990).  Here Mr. Jenkins argues that the ALJ did not give appropriate weight to the VA's decision.  The entirety of the ALJ's discussion of the VA's decision is as follows:

---

[1]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**The undersigned has also considered that the Department of Veteran's Affairs has found the claimant entitled to a non-service connected pension of less than 50% (Exhibits C15F and C13F). However, the decision yielded no clues as to how this determination of the unemployability of the claimant was made. Furthermore, the Social Security Administration and the Department of Veteran's Affairs have different criteria with which disability evaluations are made and function under different law and regulation, with the Department of Veteran's Affairs also assessing percentages of disability. Thus, although considered in the decision, the undersigned has accorded little weight to this determination made by a separate and distinct agency.**

(Tr. 28).  Mr. Jenkins argues that the decision to give the VA decision only little weight is erroneous for two reasons: First, there is no mention in the record that the VA rating was "less than 50%" as the ALJ found, and second, the ALJ's finding that the VA decision "yielded no clues" as to how the determination was made is unsupported by the record.

The VA's written decision is relatively brief.  It recites that the VA considered treatment records from the VA Hospital and Clinic as well as Dr. Barnhill's records. The ultimate VA decision reads as follows:

## REASONS FOR DECISION

**Entitlement to nonservice-connected pension.**

**The veteran is unable to secure and follow a substantially gainful occupation due to disability.  You are a 44 years old high school graduate and last worked in 2002 as a phone solicitor.  The evidence shows that you are disabled due to his disabilities of chronic pain syndrome and somatization disorder, and hypertension. Based on your age, work history, and the severity of your disabilities we determined that you are unable to obtain and maintain substantial gainful employment, and entitlement to nonservice-connected pension is established.  The effective date is March 31, 2004, the date that your claim was received.**

(Tr. 272).

The Commissioner concedes that the ALJ's finding of a less then 50% finding was erroneous (doc. 19, p. 8), but argues that this would have had no effect on the ALJ's final determination because the ALJ is bound by Social Security regulations, not VA regulations.  The undersigned disagrees.  It stretches logic to say that the ALJ found Mr. Jenkins not disabled based in part of a VA rating of less than 50% (which can be anywhere from 1% to 49%), but necessarily would have made the same determination if the VA rating were 100%.

Moreover, the undersigned agrees with Mr. Jenkins that the ALJ's finding that there were no clues in the VA decision on how that decision was reached is unsupported.  The paragraph quoted is replete with clues.  Apparently recognizing this, the Commissioner argues that while the underlying regulation of both agencies are very similar, the VA regulations lack a critical element: the VA is not required to consider a claimant's "ability to perform work-related tasks despite his impairments."  20 C. F. R. §§ 404.1520(a)(4), 416.920(a)(4), 404.1545(a), 416.945(a).  The VA regulations, in other words, do not require the adjudicator to make a residual functional capacity determination.

Under the facts here, that is a distinction without a difference.  The VA found that Mr. Jenkins was "unable to secure and follow a substantial gainful occupation due to disability" based on "disabilities of chronic pain syndrome and somatization disorder, and hypertension" in light of his "age, work history, and the severity of your disabilities. . . ."  (Tr. 272).  The Commissioner argues that the agency is not bound by an outside opinion that a claimant is disabled.  That includes opinions by treating physicians, 20 C.F.R. § 404.1527(e)(1) (providing that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion); *see also* Title 20 C.F.R. § 416.927(e); the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner, title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3).  It also includes a formal finding by another agency.  *See* Social

Security Ruling (SSR) 06-03p, *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, at *6-*7 ("[a] decision by . . . any other governmental agency about whether [the claimant is] disabled .. . is based on its rules and not [SSA's] decision about whether [the claimant] is disabled . .. . [t]herefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that [the claimant] is disabled is not binding on [SSA]"). That does not resolve the issue, however. A VA decision or disability decision must still be given consideration and great weight unless there is substantial record evidence to refute it, and if there is such evidence, the evidence must be discussed by the ALJ. *Bloodsworth v. Heckler*, *supra*; *DePaepe v. Richardson, supra*. The ALJ here gave the VA decision little weight based on two erroneous findings. This was an erroneous application of the facts to the law.

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983). Here, the ALJ's finding of facts were in part unsupported

by substantial record evidence.  The matter should be remanded.[2]

On remand, the parties should not read this report and recommendation as saying that the VA decision necessarily must be followed.  The ALJ is the adjudicator in this case, and he is entitled to give the VA decision whatever weight is appropriate based on substantial record evidence.  In other words, if he again decides again to give the VA decision little weight, he must give valid reasons for doing so.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further consideration in light of this report and recommendation.  The clerk should be directed to close the file.

At Pensacola, Florida this 8th day of March, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

---

[2]The remainder of Mr. Jenkins' claimed errors will ultimately be affected by the erroneous findings discussed above and on reconsideration on remand.  It is therefore unnecessary to discuss them further here.